IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT D. LENIG, ET AL., | : | CONSOLIDATED UNDER |
| | : | MDL 875 |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| CLEAVER BROOKS COMPANY, INC., | : | E.D. PA CIVIL ACTION NO. |
| ET AL., | : | 2:13-07645-ER |
| | : | |
| Defendants. | : | |

FILED
MAR - 6 2015
MICHAEL E. KUNZ, Clerk
By_____ Dep. Clerk

<u>O R D E R</u>

**AND NOW,** this **4th** day of **March, 2015**, it is hereby

**ORDERED** that the Motion for Summary Judgment of Defendant Owens-Illinois, Inc. (Doc. No. 171) is **GRANTED**.[1]

---

[1] This case was removed in December of 2013 from the Court of Common Pleas of Philadelphia to the United States District Court for the Eastern District of Pennsylvania as part of MDL-875.

Plaintiff alleges that Robert Lenig ("Decedent" or "Mr. Lenig") was exposed to asbestos while, <u>inter alia</u>, serving in the U.S. Navy and, specifically, the Boston Navy Yard, during a time period that included 1955. Plaintiff alleges that Defendant Owens-Illinois, Inc. ("Owens-Illinois") manufactured insulation distributed by Owens Corning and used aboard ships. The alleged asbestos exposure pertinent to Defendant occurred while Decedent was aboard the following ships:

- <u>USS Tarawa</u>

Plaintiff asserts that Mr. Lenig developed mesothelioma as a result of his exposure to asbestos from Defendant's insulation. He was not deposed in connection with this action.

Plaintiffs brought claims against various defendants. Defendant Owens-Illinois has moved for summary judgment, arguing that there is insufficient evidence to establish causation with respect to its product(s).

Plaintiffs assert that Pennsylvania law applies, while Defendant asserts that maritime law applies.

**II. Legal Standard**

   A.   Summary Judgment Standard

   Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986)). A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

   In undertaking this analysis, the court views the facts in the light most favorable to the non-moving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth. of N.Y. & N.J., 593 F.3d 265, 268 (3d Cir. 2010) (citing Reliance Ins. Co. v. Moessner, 121 F.3d 895, 900 (3d Cir. 1997)). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the non-moving party who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250.

   B.   The Applicable Law

   Plaintiffs assert that Pennsylvania law applies, while Defendant asserts that maritime law applies. Whether maritime law is applicable is a threshold dispute that is a question of federal law, see U.S. Const. Art. III, § 2; 28 U.S.C. § 1333(1), and is therefore governed by the law of the circuit in which this MDL court sits. See Various Plaintiffs v. Various Defendants ("Oil Field Cases"), 673 F. Supp. 2d 358, 362 (E.D. Pa. 2009)(Robreno, J.). This court has previously set forth guidance on this issue. See Conner v. Alfa Laval, Inc., 799 F. Supp. 2d 455 (E.D. Pa. 2011)(Robreno, J.).

2

In order for maritime law to apply, a plaintiff's exposure underlying a products liability claim must meet both a locality test and a connection test. Id. at 463-66 (discussing Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 534 (1995)). The locality test requires that the tort occur on navigable waters or, for injuries suffered on land, that the injury be caused by a vessel on navigable waters. Id. In assessing whether work was on "navigable waters" (i.e., was sea-based) it is important to note that work performed aboard a ship that is docked at the shipyard is sea-based work, performed on navigable waters. See Sisson v. Ruby, 497 U.S. 358 (1990). This Court has previously clarified that this includes work aboard a ship that is in "dry dock." See Deuber v. Asbestos Corp. Ltd., No. 10-78931, 2011 WL 6415339, at *1 n.1 (E.D. Pa. Dec. 2, 2011)(Robreno, J.)(applying maritime law to ship in "dry dock" for overhaul). By contrast, work performed in other areas of the shipyard or on a dock, (such as work performed at a machine shop in the shipyard, for example, as was the case with the Willis plaintiff discussed in Conner) is land-based work. The connection test requires that the incident could have "'a potentially disruptive impact on maritime commerce,'" and that "'the general character' of the 'activity giving rise to the incident' shows a 'substantial relationship to traditional maritime activity.'" Grubart, 513 U.S. at 534 (citing Sisson, 497 U.S. at 364, 365, and n.2).

### Locality Test

If a service member in the Navy performed some work at shipyards (on land) or docks (on land) as opposed to onboard a ship on navigable waters (which includes a ship docked at the shipyard, and includes those in "dry dock"), "the locality test is satisfied as long as some portion of the asbestos exposure occurred on a vessel on navigable waters." Conner, 799 F. Supp. 2d at 466; Deuber, 2011 WL 6415339, at *1 n.1. If, however, the worker never sustained asbestos exposure onboard a vessel on navigable waters, then the locality test is not met and state law applies.

### Connection Test

When a worker whose claims meet the locality test was primarily sea-based during the asbestos exposure, those claims will almost always meet the connection test necessary for the application of maritime law. Conner,

> 799 F. Supp. 2d at 467-69 (citing Grubart, 513 U.S. at 534). This is particularly true in cases in which the exposure has arisen as a result of work aboard Navy vessels, either by Navy personnel or shipyard workers. See id. But if the worker's exposure was primarily land-based, then, even if the claims could meet the locality test, they do not meet the connection test and state law (rather than maritime law) applies. Id.

The alleged exposures pertinent to Defendant occurred aboard a ship. Therefore, these exposures were during sea-based work. See Conner, 799 F. Supp. 2d 455; Deuber, 2011 WL 6415339, at *1 n.1. Accordingly, maritime law is applicable to Plaintiff's claims against Defendant. See id. at 462-63.

### C. Bare Metal Defense Under Maritime Law

This Court has held that the so-called "bare metal defense" is recognized by maritime law, such that a manufacturer has no liability for harms caused by – and no duty to warn about hazards associated with – a product it did not manufacture or distribute. Conner v. Alfa Laval, Inc., 842 F. Supp. 2d 791, 801 (E.D. Pa. 2012)(Robreno, J.).

### D. Product Identification/Causation Under Maritime Law

In order to establish causation for an asbestos claim under maritime law, a plaintiff must show, for each defendant, that "(1) he was exposed to the defendant's product, and (2) the product was a substantial factor in causing the injury he suffered." Lindstrom v. A-C Prod. Liab. Trust, 424 F.3d 488, 492 (6th Cir. 2005); citing Stark v. Armstrong World Indus., Inc., 21 F. App'x 371, 375 (6th Cir. 2001). This Court has also noted that, in light of its holding in Conner, 842 F. Supp. 2d 791, there is also a requirement (implicit in the test set forth in Lindstrom and Stark) that a plaintiff show that (3) the defendant manufactured or distributed the asbestos-containing product to which exposure is alleged. Abbay v. Armstrong Int'l., Inc., No. 10-83248, 2012 WL 975837, at *1 n.1 (E.D. Pa. Feb. 29, 2012)(Robreno, J.).

Substantial factor causation is determined with respect to each defendant separately. Stark, 21 F. App'x. at 375. In establishing causation, a plaintiff may rely upon direct evidence (such as testimony of the plaintiff or decedent who experienced the exposure, co-worker testimony, or eye-witness testimony) or

4

circumstantial evidence that will support an inference that there was exposure to the defendant's product for some length of time. Id. at 376 (quoting Harbour v. Armstrong World Indus., Inc., No. 90-1414, 1991 WL 65201, at *4 (6th Cir. April 25, 1991)).

A mere "minimal exposure" to a defendant's product is insufficient to establish causation. Lindstrom, 424 F.3d at 492. "Likewise, a mere showing that defendant's product was present somewhere at plaintiff's place of work is insufficient." Id. Rather, the plaintiff must show "'a high enough level of exposure that an inference that the asbestos was a substantial factor in the injury is more than conjectural.'" Id. (quoting Harbour, 1991 WL 65201, at *4). The exposure must have been "actual" or "real", but the question of "substantiality" is one of degree normally best left to the fact-finder. Redland Soccer Club, Inc. v. Dep't of Army of U.S., 55 F.3d 827, 851 (3d Cir. 1995). "Total failure to show that the defect caused or contributed to the accident will foreclose as a matter of law a finding of strict products liability." Stark, 21 F. App'x at 376 (citing Matthews v. Hyster Co., Inc., 854 F.2d 1166, 1168 (9th Cir. 1988)(citing Restatement (Second) of Torts, § 402A (1965))).

### III. Defendant Owens-Illinois's Motion for Summary Judgment

#### A. Defendant's Arguments

Defendant contends that Plaintiff's evidence is insufficient to establish that any product for which it is responsible caused the illness at issue. In particular, Defendant contends that the testimony of co-worker Kenneth Prevish is impermissibly speculative and cannot provide the basis of a finding of causation.

#### B. Plaintiff's Arguments

Plaintiff contends that they have identified sufficient product identification/causation evidence to survive summary judgment. In support of this assertion, Plaintiff cites to the following evidence, which they represent is as follows:

- <u>Deposition of Co-Worker Kenneth Prevish</u>
  Mr. Prevish testified that he worked aboard the USS Tarawa during the period that included 1955. He testified that he saw insulation removal and replacement work being

5

performed, which lasted for at least six months. He identified the insulation being installed as coming from boxes marked "Owens Corning." He explained that there was a lot of dust created when old insulation was ripped out, but also testified that the installation of new insulation created dust because it required cutting the insulation, which sent dust everywhere. He specified that the insulation was asbestos pipe insulation and that it was installed in "all the boiler rooms, engine rooms," and "throughout the whole ship." Upon questioning, he clarified that this included even the sleeping quarters and the mess hall. When asked how often he was exposed to asbestos dust from the pipe insulation, he answered "every day."

When questioned about whether he knew the Decedent (Robert Lenig), Mr. Prevish testified that he did not know Mr. Lenig. When questioned whether someone serving on the <u>USS Tarawa</u> during the years 1952 to 1956 (the years of Mr. Lenig's service aboard the ship) would have been exposed to asbestos aboard the ship, he answered "yes" and explained that the pipe refitting work was being performed during that time period and that everyone aboard the ship would have been exposed to asbestos from that insulation work. Upon questioning, he answered that there was no way that anyone aboard the ship could have avoided being exposed to the asbestos from the Owens Corning pipe insulation.

(Pl. Ex. D, Doc. Nos. 173 and 173-1.)

- <u>Various Documents</u>
  Plaintiff points to various documents and testimony to establish the following: (1) asbestos-containing pipe was replaced on the ship at issue in 1955, (2) the insulation was asbestos-containing Owens-Illinois insulation supplied by Owens Corning.

6

(Pl. Exs. B-C, E-F, Doc. Nos. 173 and 173-1.)

- Expert Affidavit of Arthur Faherty
  Plaintiff points to the affidavit of expert Arthur Faherty, who provides expert opinion testimony that it was more likely than not that the pipe insulation removal and replacement work performed would have resulted in asbestos dust in the work and living areas on the ship.

(Pl. Ex. G, Doc. No. 173-1 and 173-2)

### C. Analysis

Plaintiff alleges that Decedent was exposed to asbestos from insulation manufactured by Defendant Owens-Illinois (and distributed by Owens Corning) and used aboard the USS Tarawa. Plaintiff has presented evidence that pipe insulation removal and replacement work was performed on the ship during the time in which Decedent worked aboard the ship. There is evidence that asbestos-containing pipe insulation was in all areas of the ship, including the sleeping quarters and mess hall (in addition to the work spaces such as the boiler rooms and engine rooms). Construing the evidence in the light most favorable to Plaintiff, there is evidence that the pipe insulation being installed was Owens-Illinois brand insulation supplied by Owens Corning. There is also evidence that both removal and replacement work created dust (i.e., dust was released from both the old and new insulation). There is evidence that a co-worker who did not know Decedent was exposed to asbestos from the pipe insulation "every day."

Importantly, however, there is no evidence that Mr. Lenig was exposed to respirable asbestos dust from any insulation manufactured or supplied by Defendant. Plaintiff points to expert evidence to support their contention that asbestos dust would have entered the living areas (e.g., the sleeping quarters and mess hall) as a result of the pipe repair work, and a co-worker's belief that everyone on the ship would have been exposed to asbestos. However, no evidence places Decedent in the vicinity of respirable asbestos from the pipe insulation. There is no evidence that the old insulation being ripped out was manufactured or supplied by Defendant. Although the evidence shows that Decedent was aboard the ship while new insulation manufactured by Defendant was being installed, there is no

7

E.D. Pa. No. 2:13-07645-ER                AND IT IS SO ORDERED.

/s/ Eduardo C. Robreno
_____
EDUARDO C. ROBRENO, J.

---

evidence that Decedent was nearby at that time. While expert Faherty opines that the dust would have entered the living areas, he does not opine that Decedent would have breathed in this dust while it was in the air (as opposed to, for example, the dust being already settled in the room prior to Decedent's time in the living area).

In short, no reasonable jury could conclude from the evidence that Decedent was exposed to asbestos from a product manufactured or supplied by Defendant such that it was a substantial factor in the development of his illness, because any such finding would be based on conjecture. See Lindstrom, 424 F.3d at 492. Accordingly, summary judgment in favor of Defendant is warranted. Anderson, 477 U.S. at 248-50.

### D.  Conclusion

Summary judgment in favor of Defendant is granted because Plaintiff has failed to identify sufficient evidence of product identification/causation.